WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl C. Zawatski,<br><br>             Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner<br>of the Social Security Administration,<br><br>             Defendant. | No. CV 11-736-TUC-CRP<br><br>**ORDER** |

Plaintiff has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c). The Court takes judicial notice that Michael J. Astrue is no longer Commissioner of the Social Security Administration (hereinafter "SSA"). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes the new Acting Commissioner of the SSA, Carolyn W. Colvin, as the named Defendant in this action.

Pending before the Court are Plaintiff's Opening Brief (Doc. 25) ("Plaintiff's Brief") and Defendant's Opposition to Plaintiff's Opening Brief (Doc. 26) ("Defendant's Brief"). For the following reasons, the Court will remand this action for further administrative proceedings.

BACKGROUND

In July 2007, Plaintiff protectively filed an application for disability and disability insurance benefits under the Social Security Act. (Administrative Record ("AR") 95-99; Plaintiff's Brief, p. 2). Plaintiff, a U.S. Navy veteran who last worked as a bartender, alleges he has been unable to work since June 1, 2000 due to depression, anxiety, chronic bronchitis, post-traumatic stress disorder ("PTSD"), and lung surgery. (AR 119-20; *see also* AR 448 (Plaintiff served in the Navy from 1974 to 1977)). Plaintiff's application was denied initially and on reconsideration, after which Plaintiff requested and appeared for a hearing before an administrative law judge ("ALJ"). (AR 58-61, 43-55). On April 27, 2009, the ALJ found that although Plaintiff satisfied the listed disability impairments for affective disorders and substance addiction disorders, Plaintiff was not entitled to benefits because alcoholism was a contributing factor material to the disability determination. (AR 29-42) The Appeals Council denied Plaintiff's request for review (AR 1-7), rendering the ALJ's April 27, 2009 decision the final decision of the Commissioner.

Plaintiff then initiated the instant action, raising two grounds for relief: (1) the ALJ erred by failing to consider evidence after the date last insured and by failing to give controlling weight to treating providers' opinions before and after that date; and (2) the ALJ erred by failing to give great weight to the Department of Veterans Affairs finding of 100% disability for Plaintiff's PTSD and major depressive disorder.

STANDARD

The Court has the "power to enter, upon the pleadings and the transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based

1  on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*
2  *v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

3  Substantial evidence is "'more than a mere scintilla[,] but not necessarily a
4  preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871,
5  873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098. Further, substantial evidence is
6  "such relevant evidence as a reasonable mind might accept as adequate to support a
7  conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can
8  support either outcome, the court may not substitute its judgment for that of the ALJ."
9  *Tackett*, 180 F.3d at 1098 (*citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).
10 Moreover, the Commissioner, not the court is, is charged with the duty to weigh the
11 evidence, resolve material conflicts in the evidence and determine the case accordingly.
12 *Matney,* 981 F.2d at 1019. However, the Commissioner's decision "'cannot be affirmed
13 simply by isolating a specific quantum of supporting evidence.'" *Tackett,* 180 F.3d at 1098
14 (*quoting Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir.1998)). Rather, the Court must
15 "'consider the record as a whole, weighing both evidence that supports and evidence that
16 detracts from the [Commissioner's] conclusion.'" *Id.* (*quoting Penny v. Sullivan*, 2 F.3d 953,
17 956 (9th Cir. 1993)).

18 DISCUSSION

19 SSA regulations require the ALJ to evaluate disability claims pursuant to a five-step
20 sequential process. 20 C.F.R. §§404.1520, 416.920. To establish disability, the claimant
21 must show he has not worked since the alleged disability onset date, he has a severe
22 impairment, and his impairment meets or equals a listed impairment or his residual functional
23 capacity ("RFC")[1] precludes him from performing past work. Where the claimant meets his
24 burden, the Commissioner must show that the claimant is able to perform other work, which

---

[1] RFC is defined as that which an individual can still do despite his or her limitations.
28 20 C.F.R. §§ 404.1545, 416.945.

1  requires consideration of the claimant's RFC to perform other substantial gainful work in the
2  national economy in view of claimant's age, education, and work experience.

3  A claimant cannot be found disabled if alcoholism is a contributing factor material to
4  the Commissioner's determination of disability. 42 U.S.C. §§ 404.1535(b), 416.935(b); *see*
5  *also Parra,* 481 F.3d at 746-47. In making this determination, the ALJ is required to first
6  conduct the five-step inquiry without separating the impact of alcoholism. *Bustamante v.*
7  *Massanari,* 262 F.3d 949, 955 (9th Cir. 2001). Next, the ALJ must determine which of the
8  claimant's disabling limitations would remain if the claimant stopped using alcohol. *Parra,*
9  481 F.3d at 747. "If the remaining limitations would not be disabling, then the claimant's
10 substance abuse is material and benefits must be denied." *Id.* The claimant bears the burden
11 of proving that alcoholism is not a contributing factor material to his disability. *Id.* at 748.

12 Here, the ALJ found that "[b]ecause the claimant would not be disabled if he stopped
13 the substance use...the claimant's substance use disorder is a contributing factor material to
14 the determination of disability." (AR 41). Although the ALJ found that Plaintiff was unable
15 to return to past work, the ALJ determined that if Plaintiff stopped substance use, he could
16 perform a full range of unskilled work. (*Id.* (citing the medical-vocational guidelines)).

17 The ALJ determined that Plaintiff met the insured status requirements of the Social
18 Security Act through September 30, 2004. (AR 31). Plaintiff contends that although
19 approximately 200 pages in the record are dated after September 2004, the ALJ's opinion is
20 limited to discussion of records predating September 30, 2004. Plaintiff argues that the ALJ
21 erroneously failed to consider records dated after September 30, 2004 including opinions of
22 Plaintiff's treating psychiatrist Eric Whyte, M.D., and treating psychologist Lawrence
23 Haburchak, Psy.D. (Plaintiff's Brief, pp. 2-9 (*citing* AR 625-627)). Defendant counters that
24 the ALJ correctly discussed the evidence that was directly pertinent to the time period under
25 consideration and that the ALJ properly rejected opinions rendered after September 30, 2004.

26 In 2009, Dr. Whyte wrote that he had treated Plaintiff since September 2004 and that
27 Plaintiff "carries diagnoses of Major Depressive Disorder, Recurrent (for which he has been

28

1   rated 100% by the Veterans Administration,..." PTSD, and Alcohol Dependence.  (AR 625).

2   Dr. Whyte also opined:

> It is clear to me that his disabling depressive disorder is independent of his alcohol dependence, as we have seen him suffer from severe depression even during these prolonged periods of sobriety.  Indeed, a review of his history suggests that his alcohol abuse has been a symptom of his depression, rather than a cause of it.

(*Id.*).  Dr. Whyte further stated that his review of Plaintiff's treatment records prior to 2004 showed that Plaintiff "suffered from disabling depression long before..." he began treatment with Dr. Whyte.  (*Id.*).  The ALJ gave Dr. Whyte's opinion "minimal weight" because Dr. Whyte had treated Plaintiff for "only..." one month "during the relevant time period.  The rest of claimant's treatment and, thus, the basis for Dr. Whyte's opinion is from a time period not relevant to this case."  (AR 39).

Additionally, in September 2008, Dr. Haburchak wrote that he had been treating Plaintiff since December 2003 and that Plaintiff "endures chronic symptoms of both Major Depression and PTSD," which Dr. Haburchak opined "explain the prior instability in his lifestyle, and his previous struggle with alcohol dependency." (AR 626). Dr. Haburchak also stated that "in spite of enduring prolonged episodes of emotional distress, Mr. Zawatski has demonstrated more sobriety during the past four years, than do most psychiatric patients with even less severe symptoms."  (*Id.*).  Although Defendant asserts that the ALJ "noted Dr. Haburchak's letter" (Defendant's Brief, p.9 (*citing* AR 40)), the ALJ's opinion reflects that the he mentioned Dr. Haburchak was Plaintiff's treating psychologist, however, the ALJ did not refer to Dr. Haburchak's 2009 letter.  (AR 38).

It is well-settled that the opinions of treating physicians are entitled to greater weight than the opinions of examining or non-examining physicians. *Andrews v. Shalala,* 53 F.3d 1035, 1040-1041 (9th Cir. 1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) ("We afford greater weight to a treating physician's opinion because he is employed to cure and has a greater opportunity to know and observe the patient as an individual."); *see also* 20 C.F.R §§ 404.1527, 416.927 (generally, more weight is given to treating sources).  An ALJ may reject a treating doctor's uncontradicted opinion only after giving "'clear and

- 5 -

1    convincing reasons' supported by substantial evidence in the record." *Reddick v. Chater,* 157
2    F.3d 715, 725 (9th Cir. 1998) (*quoting Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995)).
3    Additionally, "[a] treating physician's opinion on disability even if controverted can be
4    rejected only with specific and legitimate reasons supported by substantial evidence in the
5    record." *Id. See also Holohan v. Massanari,* 246 F.3d 1195, 1202-1203 (9th Cir. 2001).

6    Here, the ALJ gave Dr. Whyte's opinion "minimal weight" because Dr. Whyte had
7    treated Plaintiff for "only..." one month "during the relevant time period.  The rest of
8    claimant's treatment and, thus, the basis for Dr. Whyte's opinion is from a time period not
9    relevant to this case." (AR 39). The ALJ's statement overlooks Dr. Whyte's specific opinion
10   that Plaintiff's depressive disorder is independent of his alcohol dependence, Plaintiff's
11   "alcohol abuse has been a symptom of his depression, rather than a cause of it", and that his
12   review of his review of Plaintiff's medical records prior to September 2004 suggests that
13   Plaintiff suffered from disabling depression "long before..." September 2004.  (AR 625).
14   When discussing medical opinions rendered after the period for disability, the Ninth Circuit
15   has held that "medical reports are inevitably rendered retrospectively and should not be
16   disregarded solely on that basis." *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988); *see*
17   *also Sampson v. Chater,* 103 F.3d 918, 922 (9th Cir. 1996) ("medical evaluations made after
18   the expiration of a claimant's insured status are relevant to an evaluation of pre-expiration
19   condition."); *Lester,* 81 F.3d at 832  (same).  On the instant record, the ALJ's rejection of Dr.
20   Whyte's opinion based solely on the fact that it was rendered retrospectively does not
21   constitute a legally sufficient reason  for rejecting Dr. Whyte's opinion. *See id.*

22   Defendant's argument that Dr. Whyte's opinion was not supported by the record does
23   not alter this conclusion. First, the ALJ did not state such a reason. Additionally, "[t]he ALJ
24   must set out in the record his reasoning and the evidentiary support for his interpretation of
25   the medical evidence." *Tackett,* 180 F.3d at 1103 (*citing Lester,* 81 F.3d. at 834).  In
26   assessing Plaintiff's case, the ALJ primarily focused on the "limited treatment records for the
27   relevant time period[]" which reflected diagnoses of depression and alcohol dependence.
28   (AR 38; *see also* AR 37).  In particular, the ALJ cited Plaintiff's August 2001 progress note

1   when he reported being sober for six months. (AR 38, 197). The ALJ correctly noted that
2   Plaintiff's mental status examination reflected "he was alert cooperative, he had direct eye
3   contact, no cognitive inefficiency was found, his thinking was logical, he was coherent, and
4   he had normal effect." (AR 38). The ALJ omitted Plaintiff's report at that same session of
5   feeling "'unfocused if I'm not busy, anxiety comes out of nowhere and I feel overwhelmed.
6   It hurts inside. Sometimes my head feels like it's going to explode [sic] feel like crying feel
7   worthless, like life has no meaning and I'm going nowhere.' These episodes currently occur
8   frequently lasting hours to an entire day, but interspersed with feeling of more substantial
9   well being. " (AR 197). Although Plaintiff reported that symptoms of major depression had
10  been "significantly ameliorated..." on his current medication of Bupropion and Sertraline,
11  they were not "eliminated." (*Id.*). His diagnoses included Depression NOS and alcohol
12  dependence, in sustained early remission, and his GAF was 60. (*Id.*).

13  The ALJ also cited to October 2001 records that Plaintiff continued on medication
14  with good response, including Wellbutrin which he credited with helping him to complete
15  tasks he set out to do. (AR 38 (*citing* AR 192-193)). For example, he has been able to work
16  "a day or so a week with a friend of his and believes that if he were not on medications for
17  his depression, this would not be possible." (AR 192). The ALJ omitted Plaintiff's report
18  in March 2002 that "he has been unable to hold a job without lapses with his depression
19  causing compromise in functioning and inability to sustain employment." (AR 191).

20  In June 2002, Plaintiff reported he had been taking medication for depression and that
21  he had no suicidal/homicidal thoughts and no recurrent depressive symptoms. (AR 187).
22  By February 2003, Plaintiff reported he had not been drinking and he found his medication
23  for depression relieved his symptoms. (AR 185). In May 2003, after a relapse to alcohol the
24  previous month, he reported "high psychosocial stressors in his life" and that Zoloft relieved
25  depressive symptoms of lack of motivation, insomnia, fatigue, and lack of appetite. (AR
26  184).
27  Although Plaintiff reported good response to antidepressants in June 2003, he also stated that
28  he was unable to sustain steady employment in home remodeling because "he cannot take

1 on large jobs that demand much organization and much time commitment.  Advised him to
2 try to take only jobs that can be completed in 24 hours or so."  (*Id.*).

3        From September 7-14, 2004, Plaintiff was admitted into the VA Psychiatric
4 Department for inpatient treatment for seven days.  (*See* AR 510, 521; *see also* (AR 38 (ALJ
5 stating Plaintiff "was off his medications for several months and depressed, and he had an
6 alcohol relapse.  He was hospitalized at the VA...in September 2004 with suicidal
7 thoughts.")).  The ALJ cites to a September 13, 2004 treatment note indicating that during
8 inpatient treatment,  Plaintiff "exhibited optimism and increased hopefulness...."  (AR 37
9 (*citing* AR 525-26)).  The September 13, 2004 record cited by the ALJ also reflects that
10 Plaintiff "continued to trail off his sentences and occasionally stare at the ground during our
11 conversation.  He continued to show difficulty verbalizing his thoughts...."  (AR 525).
12 Plaintiff also described fluctuations in mood from one day to the next.  (AR 526).   On
13 September 20, 2004, after Plaintiff had been discharged from inpatient treatment, Dr.
14 Haburchak noted that "[a]lthough no longer in crises, some depression continues as well as
15 worry about his future."  (AR 509-10).

16        Although the ALJ noted that Plaintiff "apparently had not been tried on other
17 medications besides Zoloft and Bupropion," (AR 38), the record reflects that in July 2006,
18 Dr. Whyte began to taper Sertraline to replace with Venlafaxine and continued Bupropion
19 because "he seems to have gone as far as he can go with the Sertraline." (AR 326; *see also*
20 296 (Dr. Whyte noting in November 2006 that Plaintiff "likes the Venlafaxine much better
21 than the Sertraline.  Says he has more energy, more motivation and more optimism.")).

22        Review of records after 2004 also shows that in June 2006,  Plaintiff had been
23 admitted for psychiatric treatment when he presented to urgent care "with complaints of
24 increasing depression and suicidal ideation with a plan to carbon monoxide himself.  The
25 patient reported relapsing on alcohol in February 2006 after 14 months of sobriety secondary
26 to an incident at his AA house."  (AR 230-32).  In June 2006, Dr. Haburchak discussed with
27 Plaintiff the "impact of [his] PTSD on his previous relapses."  (AR 327; *see also* AR 326 (Dr.
28 Whyte's July 2006 note of Plaintiff's hyperarousal in situations where he senses

- 8 -

1  confrontations, nightmares, intrusive memories and hyperviligance.)).  In July 2006, Plaintiff
2  reported a 2-week episode of severe depression to Dr. Haburchak.  (AR 322).  At this point,
3  Plaintiff was still taking Venlafaxine.  (*See* AR 326).  In October 2006 Dr. Whyte assessed
4  a GAF score of 48. (AR 304).

5        The ALJ relied on records from September and October 2006 to show that Plaintiff
6  reported that he was not taking medications on a regular basis, that alcohol dependence
7  exacerbates his depression, and there were times when he admitted to not being depressed.
8  (AR 38-39). The ALJ further stated: "Although the claimant still experiences depression, the
9  symptoms are greatly decreased when he is sober.  The claimant's main depression
10 symptoms are evidenced by feelings of hopelessness, suicidal ideation, depressed mood."
11 (AR 39).  The ALJ's review of the record omits Plaintiff's reports of major depression lasting
12 for many years despite long periods of sobriety.  (AR 205-06 (November 1999); AR 204
13 (May 2000 and January 2001);AR 198-99 (June 2001); AR 272 (Dr. Haburchak's June 2007
14 note that  even with abstinence, Plaintiff's "emotional stability remains tenuous" in light of
15 the severity of Plaintiff's depression and PTSD); AR 326 (Dr. Whyte noting in July 2006
16 Plaintiff's report that "depression set in before he started drinking and while he was still
17 taking Sertraline and Bupropion); AR 282 (March 2007) ("worsening depression over a
18 couple of weeks, with more difficulty getting out of bed to do anything....Remaining
19 abstinent from alcohol.").

20       The ALJ's reliance on Plaintiff's comments at various times that medication helps his
21 depression is of little value given that the record is replete with Plaintiff's continued
22 complaints of  depression and continued treatment for same. Instead, such comments "must
23 be read in context of the overall diagnostic picture...." *Holohan,* 246 F.3d at 1205.  That a
24 person who suffers from severe psychiatric issues such as depression "makes some
25 improvement does not mean that the person's impairments no longer seriously affect [his]
26 ability to function in a workplace." *Id.*  Moreover the ALJ relies upon no medical opinion
27 of record suggesting that Plaintiff's depressive disorder is not independent of his alcoholism
28 or that Plaintiff did not suffer from such disabling depression long before September 2004.

1  Nor do the records cited by the ALJ necessarily support the ALJ's contrary conclusion when
2  those records are considered in context or considered on the record as a whole. "[W]hile an
3  [ALJ] is free to resolve issue of credibility as to lay testimony or to choose between properly
4  submitted medical opinions, he is not free to set his own expertise against that of a physician
5  who [submitted an opinion to or] testified before him." *McBrayer v. Secretary of Health &*
6  *Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983); *see also Tackett,* 180 F.3d at 1102-03 (ALJ
7  improperly relied on his interpretation of Plaintiff's testimony over medical opinions);
8  *Gonzalez Perez v. Health & Human Servs,* 812 F.2d 747, 749 (1st Cir. 1987) ("The ALJ may
9  not substitute his own layman's opinion for the findings and opinion of a physician...."). On
10 the instant record, the ALJ has improperly rejected Dr. Whyte's opinion.

11 Plaintiff also argues that the ALJ erred by not adopting Plaintiff's 100% VA disability
12 rating for depression. "Because social security disability and VA disability programs 'serve
13 the same governmental purpose–providing benefits to those unable to work because of a
14 serious disability,' the ALJ must give great weight to a VA determination of disability."
15 *Turner v. Commissioner of Social Security,* 613 F.3d 1217, 1225(9th Cir. 2010) (*quoting*
16 *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir. 2002). However, "[b]ecause the VA
17 and SSA criteria for determining disability are not identical,' [the Ninth Circuit
18 has]...allowed an ALJ to 'give less weight to a VA disability rating if he gives persuasive,
19 specific, valid reasons for doing so that are supported by the record.'" *Valentine v.*
20 *Commissioner of Social Security,* 574 F.3d 685, 695 (9th Cir. 2009) (*quoting McCarty,* 298
21 F.3d. at 1076).

22 Although the parties agree that Plaintiff received a 100% disability rating from the
23 VA, neither cite to that record. Nor does review of the record reflect that a copy of the VA
24 disability rating and/or decision is included. In March, 2009, Dr. Whyte wrote that Plaintiff
25 "carries diagnoses of Major Depression, Recurrent (for which he has been rated 100%
26 disabled by the Veterans Administration), Post-Traumatic Stress Disorder, and Alcohol
27 Dependence. (AR 625). In 2009, Plaintiff's counsel informed the ALJ prior to Plaintiff's
28 hearing that "[i]n 2001, [Plaintiff] was awarded disability from the Veterans' [sic]

1   Administration for PTSD and depression, and the total disability rating is now 100%." (AR
2   92; *see also* AR 156 (2009 letter to Appeals Council from Plaintiff's counsel stating:
3   "Attached is a copy of the October 5, 2009, decision letter and the September 30, 2009,
4   ratings decision, granting Claimant 100% disability for major depressive disorder."); AR 626
5   (2008 letter from Dr. Haburchak stating that the VA "recently evaluated..." Plaintiff and
6   determined that he was 100% disabled); AR 272 (August 2007 progress note mentioning
7   Plaintiff received "100% SC"); AR 191 (March 2002 progress note that Plaintiff reported
8   "he recently became non service connected for his depression and this has greatly relieved
9   his financial burdens....")).

Although the ALJ acknowledges a VA decision exists, he does not identify the disability rating assigned to Plaintiff. The record suggests that Plaintiff received a partial VA disability rating for depression prior to receiving the 100% disability rating. (*See id.*). The ALJ's statements concerning the VA disability decision are incongruent with the balance of his decision denying benefits. The ALJ first "recogniz[ed] the complexity in distinguishing between limitations as a result of alcoholism and limitations caused by the claimant's other psychological impairments, and whether the claimant can be considered disabled by such impairment despite alcoholism." (AR 40). He then acknowledges that "[t]he VA's decision clearly distinguishes the alcohol dependence as a separate issue from the depression and other psychological impairment symptoms." (*Id.*). He next states that: "The claimant's psychological impairments are serious enough to be disabling without regard to the substance abuse problem, and it is logical to conclude that they always have been, despite the years of substance abuse." (*Id.*). Because the VA decision is not before the Court, there is no way to assess whether the ALJ is restating a finding from that decision. If that is the case, then such a finding is certainly consistent with Dr. Whyte's opinion and is completely inconsistent with the ALJ's ultimate conclusion in Plaintiff's case.

Defendant points out that "there is no indication that the VA found Plaintiff was disabled prior to the date he was last ensured." (Defendant's Brief, p. 12). While it is true that the VA's disability onset date is unknown, the ALJ did not reject the VA's disability

decision for this reason. Defendant also argues that it would have been "redundant" for the ALJ to state the reasons why he rejected the VA disability decision given that the ALJ had already stated earlier in his decision "evidence in the record contrary to the VA decision." (*Id.* at p. 10). However, the standard is clear that to give less weight to a VA disability the ALJ must give "persuasive, specific, valid reasons for doing so that are supported by the record." *Valentine,* 574 F.3d 685. The ALJ never specifically adopted nor rejected the VA decision. Nor did he state the weight he attributed to it or a basis therefor. On this record, the ALJ's statements concerning the VA disability rating are not sufficient to permit adequate review. Moreover, "when the record suggests a likelihood that there is a VA disability rating, and does not show what it is, the ALJ has a duty to inquire." *McLeod v. Astrue,* 640 F.3d 881, 886 (9th Cir. 2011) ("By failing to obtain and consider [plaintiff's] VA disability rating, the ALJ erred, denying him the "full and fair hearing" to which he was entitled."); *see also Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ's duty to develop the record "exists even when the claimant is represented by counsel."). Although the ALJ was aware of a VA disability decision in favor of Plaintiff, there is no indication in the record that he inquired as to the basis for that decision, was aware of the precise time period addressed by that decision, or any specific rating assigned to Plaintiff during the relevant time period. The ALJ's failure to make further inquiry into this matter was erroneous. *See McLeod,* 640 F.3d at 886. "Because we give VA disability determinations great weight, failure to assist [Plaintiff] in developing the record by getting his disability determination into the record is reasonably likely to have been prejudicial." *Id.* at 888 (remanding case). This is especially so given that the "[t]here are limited treatment records for the relevant time period" (AR 38) and that Plaintiff's treating psychiatrist opines that Plaintiff's disabling depression is independent of his alcohol dependence and "it is clear" upon review of records that Plaintiff suffered from such depression long before September 2004. (AR 625). The VA disability determination may well shed light on this issue.

Plaintiff requests that the Court grant benefits. (Plaintiff's Brief, p.15). "'[T]he decision whether to remand the case for additional evidence or simply to award benefits is

- 12 -

1 within the discretion of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989)
2 (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further
3 administrative proceedings is appropriate if enhancement of the record would be useful."
4 *Benecke v. Barnhart,* 379 F.3d 587, 593, (9th Cir. 2004) (*citing Harman v. Apfel,* 211 F.3d
5 1172, 1178 (9th Cir. 2000)). Conversely, remand for an award of benefits is appropriate
6 where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* at 593(citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings....Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id.* (citations omitted).

Here, remand for an immediate award of benefits is inappropriate. Even if the Court were to credit Dr. Whyte's opinion, *see Lester*, 81 F.3d at 834 ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter of law.")(citation omitted), the issue of the onset date remains unresolved. Remand is also appropriate for consideration of the VA disability decision and rating, which may also inform the record as to onset. *See McLeod,* 640 F.3d at 888. On remand, the ALJ may consider additional evidence deemed necessary. *See e.g.* SSR 83-20. Alternatively, on remand, "the...[Commissioner] may decide to award benefits." *See McAllister v. Sullivan,* 888 F.2d 599, 604 (9th Cir. 1989).

CONCLUSION

For the foregoing reasons, remand for further proceedings is necessary to consider whether Plaintiff is disabled under the Social Security Act. Accordingly,

IT IS ORDERED that the Commissioner's final decision in this matter is REMANDED for further proceedings consistent with this Order.

The Clerk of Court is DIRECTED to:

(1) amend the docket to reflect that Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, has been substituted as the named Defendant in this action pursuant to Fed.R.Civ.P. 25(d); and

(2) enter judgment and close this case.

DATED this 26th day of September, 2013.

*[signature]*

**CHARLES R. PYLE**
UNITED STATES MAGISTRATE JUDGE